UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-21123-GAYLES/TORRES

RUBEN GUZMAN,
YONDER SANCHEZ, and
EMMANUEL DUCHATELLIER,

    Plaintiffs,

v.

CRUISE YACHT OP CO. LTD, individually
and d/b/a THE RITZ-CARLTON YACHT
COLLECTION, RICHARD CARSON,
and CYNTHEA BERMUDEZ,

    Defendants.
_____/

**ORDER**

**THIS CAUSE** comes before the Court on Defendant Richard Carson's Motion to Dismiss Plaintiffs' Amended Complaint (the "Motion"). [ECF No. 31]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

**I.    BACKGROUND**

Plaintiffs Ruben Guzman ("Guzman"), Yonder Sanchez ("Sanchez"), and Emmanuel Duchatellier ("Duchatellier") (collectively "Plaintiffs") filed this action against Defendants Cruise Yacht Op Co. Ltd individually and d/b/a The Ritz-Carlton Yacht Collection ("RCYC"), Richard Carson ("Carson"), and Cynthea Bermudez ("Bermudez") (collectively "Defendants") alleging Defendants retaliated against them for complaining about discriminatory employment practices. [ECF No. 19]. Plaintiffs are former employees of RCYC and worked in RCYC's Miami office. *Id.* ¶ 2-4. RCYC is a foreign profit corporation registered to business in Florida. *Id.* ¶ 6.

Bermudez was one of Plaintiffs' supervisors at RCYC and resides in Florida. *Id.* ¶¶ 5, 8. Carson was RCYC's Director of Global Sales and held supervisory authority over Plaintiffs during their employment. *Id.* ¶ 9. Carson resides in Malta and works solely out of RCYC's office in Malta. [ECF No. 31-1]. Carson does not conduct business or own property in Florida. *Id.* He has had only isolated contact with Florida and, aside from attending a party in Miami in August of 2020, did not travel to Florida during the relevant time period. *Id.*; [ECF No. 36].

According to the Amended Complaint, RCYC employed Plaintiffs in its Miami office as sales agents. [ECF No. 19 ¶ 18]. Guzman is a 63-year-old Hispanic man of Mexican national origin; Sanchez is a 33-year-old Cuban man; and is Duchatellier is a 40-year-old Black man of Haitian national origin. *Id.* ¶¶ 19-21. As relevant to the Motion, Plaintiffs allege that Carson, while in Malta, had videoconference meetings with Plaintiffs and other sales agents. During those meetings, Carson, "on behalf of RCYC, repeatedly told Sanchez and Duchatellier they sounded 'ghetto' on the calls." *Id.* ¶ 37. Carson explained that RCYC was unhappy with how the Miami sales agents sounded on scripted calls and "commanded" them "to sound *more* 'British,' and to conform to 'European' sensibilities, sounding 'refined,' 'upscale,' and 'ritzy.'" *Id.* ¶ 36. Plaintiffs complained to RCYC about its (1) directive for them to sound more British, (2) refusal for sales agents to communicate with clients in Spanish, and (3) emphasis on Plaintiffs changing their "linguistic characteristics." *Id.* ¶¶ 40, 41, 44, 45, & 47. After Plaintiffs complained, RCYC terminated Duchatellier and Guzman and initiated other retaliatory acts against Sanchez. *Id.* at ¶¶ 9, 12, 67, 73, 84, 89. 104, 106, 109, 123, & 128.

On July 11, 2023, Plaintiffs filed their Amended Complaint setting forth claims for: (1) retaliation in violation of Title VII against RCYC; (2) retaliation in violation of the Florida Civil Rights Act ("FCRA") against RCYC; (3) retaliation in violation of 42 U.S.C. § 1981 against all Defendants; (4) hostile work environment in violation of Title VII against RCYC; (5) hostile work

environment in violation of the FCRA against RCYC; and (6) disparate treatment under the Age Discrimination in Employment Act by Guzman against RCYC. *Id.* On July 25, 2022, Carson moved to dismiss for lack of personal jurisdiction.

## II. ANALYSIS

### A. Personal Jurisdiction

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). When a defendant submits evidence in support of its challenge to personal jurisdiction, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)). "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff," *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (citation omitted), and still must "accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Madara*, 916 F.2d at 1514.

The Court undertakes a two-step inquiry in determining whether personal jurisdiction over a nonresident defendant exists. First, the court must determine whether the exercise of jurisdiction is appropriate under Florida Statute § 48.193, Florida's long-arm statute. Second, the court must determine whether personal jurisdiction over the defendant violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Mutual Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir. 2004).

### 1. Florida's Long-Arm Statute

Specific jurisdiction "authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts related to the plaintiff's cause of action." *Louis Vuitton*, 736 F.3d at 1352. Plaintiffs argue that the Court has jurisdiction over Carson under the Florida long-arm statute's "tortious acts within Florida" provision. According to that provision, a nonresident defendant is subject to personal jurisdiction in Florida "for any cause of action arising from . . . [c]omitting a tortious act within [Florida]." Fla. Stat. § 48.193(1)(a)(2). Courts in the Eleventh Circuit apply a broad construction of subsection (1)(a)(2) and consistently hold that the physical presence of a defendant in Florida is not required for long-arm jurisdiction if the plaintiff suffered harm in Florida. *See, e.g.*, *Louis Vuitton*, 736 F.3d at 1354; *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). Nevertheless, the Florida long-arm statute mandates that the tort be committed in Florida. Plaintiffs allege that Carson committed a tortious act in Florida when he communicated discriminatory practices to Plaintiffs and retaliated against them for voicing opposition to those practices.[1]

---

[1] In *Douglas v. Cruise Yacht Op Co. Ltd.*, No. 21-CV-23980, 2022 WL 1719312, at *11 (S.D. Fla. May 27, 2022), a related case in this District, Defendants were sued by three other, former RCYC employees. There, Judge Bloom found no personal jurisdiction over Carson because the plaintiffs' alleged causes of action did not arise from Carson's communications into Florida. *Id.* (finding "too great a disconnect between [Carson's] alleged communications into the state and the asserted causes of action to fall within the bounds of the long-arm statute."). *See also Wendt v. Horowitz,* 822 So. 2d 1252, 1260 (Fla. 2002) ("[C]ommitting a tortious act in Florida . . . can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida. However, the cause of action must arise from the communications."). Here, Plaintiffs filed the Amended Complaint after Judge Bloom's ruling in *Douglas*, and included allegations that Carson initiated tortious acts within Florida including communicating discriminatory policies and reprimanding and/or terminating Plaintiffs. Because the Court finds that the corporate shield doctrine applies and Carson lacks minimum contacts with Florida, it does not address whether Plaintiffs' claims arise from Carson's actions.

Carson argues that the corporate shield doctrine prevents this Court from exercising personal jurisdiction over him. The Court agrees. The corporate shield doctrine "does not allow long-arm jurisdiction over a corporate official, officer, or employee when he is acting on behalf of one's corporation . . . The rationale of the doctrine is the notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." *Smith v. Panera Bread*, No. 08-60697, 2009 WL 10667191, *8 (S.D. Fla. Aug. 11, 2009) (quoting *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993)) (internal quotations omitted). In some circumstances, intentional misconduct by an individual defendant constitutes an exception to the corporate shield doctrine. *Doe*, 620 So. 2d at 1006 n.1. "Florida courts, however, have generally imposed the additional requirement that the intentional tort must have been committed for the corporate officer's personal benefit, rather than merely for the benefit of the corporation." *VIS Holdings Corp. v. Cooper*, No. 07-20882, 2007 WL 9702900, at *6 (S.D. Fla. Dec. 11, 2007). *See also Smith*, 2009 WL 10667191 at *8 (holding that "mere allegations of intentional misconduct on behalf of the employer . . . without more are not enough to avoid the corporate shield doctrine."); *Frohnhoeffer v. Pontin*, 958 So. 2d 420, 422 (Fla. 3d DCA 2007) (holding corporate shield doctrine applied where "[a]ll of the acts alleged against the [corporate officers] . . . were acts committed by them in their corporate capacities").

In the Amended Complaint, Plaintiffs allege that Carson had supervisory authority over them, held daily meetings via videoconference where he announced employment practices that they opposed as discriminatory, and later retaliated against them. [ECF No. 19 ¶ 9]. While these allegations include instances of intentional misconduct, they are all based on Carson's acts committed solely in his capacity as an executive for RCYC. Indeed, there are no allegations that

Carson personally benefitted from the alleged discriminatory acts and retaliation. Accordingly, the corporate shield doctrine prevents this Court's exercise of personal jurisdiction over Carson.

### 2. Minimum Contacts

Even if the corporate shield doctrine did not apply, the Court finds that Plaintiffs fail to establish that jurisdiction over Carson comports with the Due Process Clause of the Fourteenth Amendment. "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (citation omitted). "In specific personal jurisdiction cases, we apply the three-part due process test, which examines: (1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts within the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Dohler S.A. v. Guru*, No. 16-23137, 2017 WL 4621098, at *5 (S.D. Fla. Oct. 16, 2017) (quoting *Louis Vuitton*, 736 F.3d at 1355).

The Court finds that Plaintiffs have failed to establish that Carson purposefully availed himself "of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1363 (11th Cir. 2006) (citation omitted).[2] In intentional tort cases, courts have used the "effects test" to determine whether purposeful availment exists.[3] *Louis Vuitton*, 736 F.3d at 1356–

---

[2] Because the Court finds that Plaintiffs cannot satisfy the purposeful availment prong of the test, it does not address whether Plaintiffs' claims arise out of Carson's contacts with the forum or whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

[3] The Eleventh Circuit has made clear that courts may apply either the effects test or the minimum contacts test to determine whether purposeful availment occurred in intentional tort cases. *Louis Vuitton*, 736 F.3d at 1356. Accordingly, the Court only examines Defendants' contacts under the effects test.

57; *Calder v. Jones*, 465 U.S. 783, 788–90 (1984) (providing authoritative statement for effects test doctrine). To satisfy the effects test, the defendant's tort must have: "(1) [been] intentional; (2) [been] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Licciardello*, 544 F.3d at 1286. "Under the effects test, a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state." *Louis Vuitton*, 736 F.3d at 1356 (internal quotation marks omitted). But due process still requires that the act "create[s] a substantial connection with the forum." *Burger King*, 471 U.S. at 475 n.18 (internal quotation marks omitted). And the Supreme Court has "made clear that mere injury to a forum resident is not a sufficient connection to the forum." *Walden v. Fiore*, 571 U.S. 277, 278 (2014). "[T]he relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id.* at 284 (quoting *Burger King*, 471 U.S. at 4750).

As set forth in his declaration, Carson has no meaningful contacts with the forum. During the relevant time period, Carson lived in Malta and worked solely out of RCYC's office in Malta. [ECF No. 31-1]. Carson does not conduct business or own property in Florida and did not travel to Florida aside from attending one party in Miami. *Id.* Indeed, Carson's only connection to Florida is his alleged videoconference communications with Plaintiffs and other employees of RCYC. This, without more, is insufficient to establish that Carson purposefully availed himself of the forum. *See Walden*, 571 U.S. at 285-86 ("[P]laintiff cannot be the only link between the defendant and the forum . . . [and] a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."). Accordingly, the claim against Carson must be dismissed for lack of personal jurisdiction.

### III. CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that Defendant Richard Carson's Motion to Dismiss Plaintiffs' Amended Complaint, [ECF No. 31], is **GRANTED.** Plaintiffs' claim against Defendant Richard Carson is **DISMISSED** without prejudice.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 20th day of March, 2023.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE